IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AGRIBUSINESS UNITED DMCC and AGRIBUSINESS UNITED NORTH AMERICA CORPORATION, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-16-2249 |
| BLUE WATER SHIPPING COMPANY, INC., | § § § | |
| Defendant. | § | |

**MEMORANDUM OPINION**

Pending before the court[1] is Defendant's Motion to Dismiss or, in the Alternative, to Transfer Venue (Doc. 7). The court has considered the motion, Plaintiffs' response, Defendant's reply, all other relevant filings, and the applicable law. For the reasons set forth below, the court **GRANTS** Defendant's motion to dismiss.

**I. Case Background**

Plaintiffs, "charterers/shippers of the M.V. FENGLI 11" ("the Vessel") filed this admiralty case against Defendant, a freight forwarding service, for failing to provide services it committed to perform.[2]

**A. Factual Background**

Plaintiff Agribusiness United DMCC is a foreign corporation

---

[1] The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. See Doc. 15, Ord. Transferring Case Dated Nov. 14, 2016.

[2] Doc. 1, Pls.' Verified Compl. pp. 2-3.

with its principal place of business in the United Arab Emirates, and Plaintiff Agribusiness United North America Corporation is a foreign corporation with its principal place of business in Savannah, Georgia.[3] Defendant was organized and maintains its principal place of business in Louisiana.[4] Defendant also maintains a "small satellite office" in Houston and is registered to do business in Texas.[5]

In October 2012, Plaintiffs were hired to transport soybean meal in bulk to be loaded on the Vessel in Savannah, Georgia, and Myrtle Grove, Louisiana.[6] Plaintiffs, in turn, contracted with Defendant to secure necessary inspections, approvals, and certificates for the cargo.[7] In particular, Plaintiffs gave Defendant documentary instructions to arrange for the issuance of bills of lading, phytosanitary certificates, fumigation certificates, and other documents.[8] Defendant's Louisiana employees performed all actions related to the shipment that was

---

[3] Id. pp. 1-2.

[4] Doc. 7-3, Ex. 1 to Def.'s Mot. to Dismiss or, in the Alternative, to Transfer Venue ("Def.'s Mot. to Dismiss"), Decl. of Keith Wild ("Wild") ¶ 3.

[5] Id. ¶ 5; Doc. 10-2, Ex. 3 to Pls.' Opp. to Def.'s Mot. to Dismiss, Bus. Orgs. Inquiry.

[6] Doc. 1, Pls.' Verified Compl. p. 2.

[7] Id.

[8] Id.

the subject of the contract with Plaintiffs.[9]

The Vessel arrived in Savannah in early December 2012 to begin loading operations the following day.[10] Defendant failed: (1) to arrange for a Federal Grain Inspection Service ("FGIS") holds inspection; (2) to arrange for an FGIS surveyor to be present at commencement of loading; (3) or to obtain a phytosanitary certificate prior to loading.[11] After loading was partially complete, Plaintiffs learned of these omissions.[12] To allow the FGIS surveyor to complete the required inspection, Plaintiffs moved the already loaded cargo from hold to hold and delayed the loading of the remaining cargo.[13] The resulting ten-day delay caused Plaintiffs to sustain "losses in Vessel demurrage, extra costs incurred for failure to timely inspect holds, shortages of cargos, and extension penalties incurred at the second loading port."[14]

In June 2014, Plaintiffs forwarded a demand to Defendant for

---

[9] See Doc. 7-3, Ex. 1 to Def.'s Mot. to Dismiss, Decl. of Wild ¶ 5; Doc. 7-3, Ex. 2 to Def.'s Mot. to Dismiss, Decl. of John W. Imms III ¶ 3; Doc. 7-3, Ex. 3 to Def.'s Mot. to Dismiss, Decl. of Kenneth J. Carson Jr. ¶ 3.

[10] Doc. 1, Pls.' Verified Compl. p. 3.

[11] Id.

[12] Id. Defendant's employee stated in his declaration that, "[d]uring the early stages of the loading process in Savannah, [he] came to realize the failure on the part of [Plaintiff Agribusiness United DMCC] or its local representatives to arrange for [U.S. Department of Agriculture] attendance at loading, and [he] brought this matter to [Plaintiff Agribusiness United DMCC's] attention immediately." Doc. 7-3, Ex. 2 to Def.'s Mot. to Dismiss, Decl. of John W. Imms III ¶ 12.

[13] See Doc. 1, Pls.' Verified Compl. p. 3.

[14] Id.

3

the payment of $636,234.61 in damages, interest, and costs.[15] Defendant refused to pay.[16]

**B.  Procedural Background**

On July 28, 2016, Plaintiffs filed this action, asserting jurisdiction pursuant to 28 U.S.C. § 1333, which allows a district court to exercise original jurisdiction over admiralty or maritime civil suits.[17]  Plaintiffs asserted that the venue was proper because Defendant had a place of business in Houston.[18] Plaintiffs identified Defendant as "a foreign corporation registered to do business in Texas with a place of business in Houston."[19] Plaintiffs alleged breach of contract, fraudulent misrepresentation, negligence, and gross negligence and sought compensatory and punitive damages, as well as costs and attorneys' fees.[20]

On September 30, 2016, Defendant filed the pending motion to dismiss.[21]  Since then, Plaintiffs have responded; Defendant has replied; and the parties have consented to proceed before the

---

[15]    Id.

[16]    Id.

[17]    See id. p. 1.

[18]    See id.

[19]    Id. p. 2.

[20]    See id. pp. 4-6.

[21]    See Doc. 7, Def.'s Mot. to Dismiss.

4

undersigned.[22]

On October 28, 2016, Plaintiffs filed a lawsuit in the U.S. District Court for the Eastern District of Louisiana ("EDLA"), alleging the same claims based on the same facts against the same defendant as pending here.[23] The only differences between the two complaints, other than the districts in which they were filed, are that, in the EDLA, Plaintiffs pled diversity as well as admiralty or maritime jurisdiction, Plaintiffs asserted that venue was proper in the EDLA because Defendant was "a corporation organized and existing under the laws of the State of Louisiana with its principal place of business in Metairie, Louisiana," and Plaintiffs repeated that Defendant was organized under Louisiana law and maintained a principal place of business in Louisiana in identifying Defendant as a party.[24]

The court now addresses Defendant's motion pending before this court.

## II. Defendant's Motion to Dismiss

Defendant seeks dismissal of this action based on several assertions: (1) the court cannot exercise admiralty or maritime subject matter jurisdiction over the case; (2) the court cannot

---

[22] See Doc. 10, Pls.' Opp. to Def.'s Mot. to Dismiss; Doc. 13, Def.'s Reply; Doc. 15, Ord. Transferring Case Dated Nov. 14, 2016.

[23] See Doc. 13-1, Ex. 17 to Def.'s Reply, Pls.' Verified Orig. Compl. in Agribusiness United DMCC v. Blue Water Shipping Co., Civil Action No. 16-15926 (E.D. La. Oct. 28, 2016).

[24] Compare id. p. 2 with Doc. 1, Pls.' Verified Compl. pp. 1-2.

exercise personal jurisdiction over Defendant; (3) venue is improper in this district; and (4) even if venue is a proper here, the court should transfer the case to the EDLA for the convenience of the parties and witnesses and in the interest of justice. In its response, Plaintiffs address each of Defendant's asserted bases for dismissal or transfer.

### A. **Subject Matter Jurisdiction**

Regarding subject matter jurisdiction, Plaintiffs alternatively request that, "to the extent that the [c]ourt deems it necessary, the Plaintiff[s] request[] leave to amend the Complaint to allege diversity jurisdiction, which it easily has in this case."[25] Although Defendant argues that the court may not exercise admiralty or maritime jurisdiction, Defendant is not opposed to Plaintiffs' request to amend their complaint.[26] If the court has the authority to exercise diversity jurisdiction, it need not determine whether it also may exercise admiralty or maritime jurisdiction. The court takes this path in its analysis.

In determining whether it is properly vested with subject matter jurisdiction, the court is "free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case." Krim v. pcOrder.com, Inc., 402 F.3d 489,

---

[25] Doc. 10, Pls.' Opp. to Def.'s Mot. to Dismiss p. 2; see also id. pp. 19-20.

[26] See Doc. 13, Def.'s Reply p. 3.

494 (5th Cir. 2005)(quoting Montez v. Dep't of Navy, 392 F.3d 147, 149 (5th Cir. 2004)). The court can exercise jurisdiction over cases in which the amount in controversy exceeds $75,000 and the controversy is between citizens of different states or between citizens of a state and citizens of foreign states. 28 U.S.C. § 1332(a). A corporation is deemed to be a citizen of every state and foreign state in which it was incorporated and of the state or foreign state in which its principal place of business is located. 29 U.S.C. § 1332(c)(1).

Here, Plaintiffs pled that both Plaintiffs were foreign corporations, one with its principal place of business in the United Arab Emirates and one with its principal place of business in Savannah, Georgia.[27] Plaintiffs pled that Defendant was "foreign corporation registered to do business in Texas with a place of business in Houston" and, in its response that Defendant was "domiciled in Texas."[28] In fact, Defendant was organized under the laws of the State of Louisiana and maintains its principal place of business in Metairie, Louisiana.[29] Plaintiffs pled damage in the amount of $636,234.61.[30]

The parties are diverse, and the amount in controversy exceeds

---

[27] Doc. 1, Pls.' Verified Compl. pp. 1-2.

[28] Id. p. 2; Doc. 10, Pls.' Opp. to Def.'s Mot. to Dismiss p. 20.

[29] Doc. 7-3, Ex. 1 to Def.'s Mot. to Dismiss, Decl. of Wild ¶ 3.

[30] See Doc. 1, Pls.' Verified Compl. pp. 3, 6.

the $75,000 threshold. Therefore, assuming an amendment to add the assertion of diversity jurisdiction, the court could exercise jurisdiction over this action.

**B. <u>Personal Jurisdiction</u>**

Defendant argues that it does not have sufficient contacts with the State of Texas to warrant either specific or general jurisdiction. Plaintiffs do not contend that specific jurisdiction applies but argue that Defendant's contacts with Texas are sufficient to warrant the exercise of general jurisdiction. Thus, the court examines whether it can exercise general jurisdiction.

The Federal Rules of Civil Procedure authorize a court to dismiss an action against a defendant when the court lacks personal jurisdiction over that defendant. <u>See</u> Fed. R. Civ. P. 12(b)(2), 12(h). On a motion to dismiss, the burden is on the plaintiff to establish a prima facie case in support of jurisdiction. <u>Patterson v. Aker Sols. Inc.</u>, 826 F.3d 231, 233 (5th Cir. 2016).

The district court "is not obligated to consult only the assertions in the plaintiff's complaint" but may receive "any combination of recognized methods of discovery," including affidavits, interrogatories, and depositions to assist it in the jurisdictional analysis. <u>Hazim v. Schiel & Denver Book Publishers</u>, 647 F. App'x 455, 457 (5th Cir. 2016)(unpublished)(quoting <u>Paz v. Brush Engineered Materials, Inc.</u>, 445 F.3d 809, 812 (5th Cir. 2006)); <u>Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.</u>, 517

F.3d 235, 241 (5th Cir. 2008)(internal quotation marks omitted)(quoting Thompson v. Chrysler Motors Corp., 755 F.2d 1162, 1165 (5th Cir. 1985)). The court resolves all conflicts in the evidence in favor of the plaintiff and accepts as true all of the plaintiff's uncontroverted allegations. Johnston v. Multidata Sys. Int'l Corp., 523 F.3d 602, 609 (5th Cir. 2008). However, "vague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." Hazim, 647 F. App'x at 460 (quoting Johnston, 523 F.3d at 610).

A federal court has personal jurisdiction over a nonresident defendant if the forum state's long-arm statute confers jurisdiction and if jurisdiction is consistent with due process under the United States Constitution. Johnston, 523 F.3d at 609. In Texas, the long-arm statute permits personal jurisdiction to the full extent allowed by the Due Process Clause. Id.

> The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice."

Latshaw v. Johnston, 167 F.3d 208, 211 (5th Cir. 1999)(quoting Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945)).

General jurisdiction exists when the defendant's contacts "are

9

so continuous and systematic as to render [it] essentially at home in the forum State." Daimler AG v. Bauman, ___ U.S. ___, 134 S. Ct. 746, 754 (2014)(internal quotation marks omitted)(quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)). However, not all continuous business activity within a state is enough to support personal jurisdiction for claims unrelated to the that activity. Id. at 757 (quoting Int'l Shoe Co., 326 U.S. at 318). "[O]nly a limited set of affiliations with a forum," those that render the business "essentially at home" there, "will render a defendant amenable to all-purpose jurisdiction there." Id. at 760, 761.

For a corporation, the "paradigm bases for general jurisdiction" are the place of incorporation and the principal place of business. Id. at 760 (quoting A General Look at General Jurisdiction, 66 Tex. L. Rev. 721, 735 (1988)). In support of the paradigm bases, the Court noted that each ordinarily points to only one state, which affords the plaintiff "recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims." Id. Since the Court's opinion in Daimler AG, the Fifth Circuit has referred to establishing general jurisdiction outside of the forum in which a business was incorporated or the forum in which it maintains its principal place of business as "incredibly difficult." Monkton Ins. Servs., Ltd. v. Ritter, 768 F.3d 429, 432 (5th Cir. 2014).

10

Recent decisions of the Fifth Circuit illustrate this point. For example, prior to the Court's issuance of <u>Daimler AG</u>, the Fifth Circuit found that a plaintiff failed to establish a prima facie case of general personal jurisdiction based on the following facts: (1) six of the defendant's employees worked at two military bases in Texas; (2) the defendant's employees sometimes worked at or attended training programs at a Texas facility owned by another company; (3) a few of the defendant's employees were processed at a military facility in Texas before traveling overseas for assignments; (4) the defendant paid unemployment and franchise taxes to the State of Texas; and (5) the defendant's website could be accessed in Texas and listed the email addresses for several of defendant's employees. <u>Bowles v. Ranger Land Sys., Inc.</u>, 527 F. App'x 319, 321 (5th Cir. 2013)(unpublished).

In another case, the Fifth Circuit found that general jurisdiction could not be exercised where a foreign defendant had a sister division and mailing address in Texas, made sales in the United States and Texas, and included Texas choice-of-law and forum-selection provisions in the subject contract. <u>Hazim</u>, 647 F. App'x at 460. The Fifth Circuit noted that the plaintiff provided no information as to the extent or duration of the sister division's activity in Texas or detail about the extent, duration, or frequency of the defendant's sales in Texas and that the forum-selection clause applied only to Texas state courts. <u>Id.</u>

A 2015 district court decision also found insufficient contacts to exercise general personal jurisdiction in this forum over a defendant that was a Michigan corporation with its principal place of business in Michigan. See Haskett v. Cont'l Land Res., L.L.C., Civil Action No. G-14-0281, 2015 WL 1419731, at *6 (S.D. Tex. Mar. 27, 2015), vacated & rev'd in part on other grounds (unpublished). The district court found that employing several residents of Texas, registering as a foreign entity with the Texas Secretary of State, nominating an agent for service of process in Texas, and filing a notice of change of its registered agent's address were not "continuous and systematic contacts" sufficient to establish general jurisdiction. Id. This determination was not raised on appeal. See Haskett v. Cont'l Land Res., L.L.C., No. 15-40595, 2016 WL 4446075, at *1 (5th Cir. Aug. 23, 2016)(unpublished).

Reaching a contrary result, another 2015 district court decision held that plaintiff made a prima facie showing of general jurisdiction in this forum where the defendant maintained an office in Texas, the defendant designated an agent for service of process in Texas, and the defendant's website and publications indicated that it or a related company installed equipment in three locations in Texas. See Del Castillo v. PMI Holdings N. Am. Inc., Civil Action No. 4:14-CV-3435, 2015 WL 3833447, at *3 (S.D. Tex. June 22, 2015)(unpublished). Without considering the third contact because of the need for discovery, the court found that general

12

jurisdiction could be based solely on the presence of an office in Texas and the designation of an agent for service. See id. **3-4.

The defendant's permanent office in Texas was particularly significant to the court, which, on that basis, characterized the defendant's resulting contacts as "doing business *in* Texas" as opposed to only "doing business *with* Texas." Id. at *3 (quoting Access Telecom Inc. v. MCI Telecomms. Corp., 197 F.3d 694, 717 (5th Cir. 1999)). The court also found the designation of an agent for service of process in Texas to indicate that the business "reasonably anticipated being haled into court in the state." Id. (internal alterations and quotation marks omitted)(quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). The court stated that Daimler AG "does not stand for the proposition that offices alone are insufficient for general jurisdiction" but that the percentage of Daimler AG's overall business that was conducted by its subsidiary in California was too small for Daimler AG "to be considered at home in the state." Id. at *4 (internal quotation marks omitted).

Here, Defendant was incorporated in Louisiana and maintains its principal place of business in Louisiana.[31] As support for the exercise of general jurisdiction in this forum, Plaintiffs point to Defendant's registration with the Texas Secretary of State, its maintenance of an office and telephone listing in Texas, and its

---

[31] See Doc. 7-3, Ex. 1 to Def.'s Mot. to Dismiss, Decl. of Wild ¶ 3.

provision of agency services for the ports of Texas. Plaintiffs submit an internet business inquiry that indicates Defendant is registered with the Texas Secretary of State as a foreign for-profit corporation with a registered agent in Texas.[32] Plaintiffs also proffer a webpage identified as Defendant's Houston directory that pictured nine employees and provided telephone contact information for each.[33] Plaintiffs present no evidence of the extent, duration, or frequency of the services Defendant provided to Texas ports. See Hazim, 647 F. App'x at 460.

In reply, Defendant provides the declaration of Keith Wild ("Wild"), Defendant's secretary and treasurer.[34] Therein, Wild stated that Defendant employs thirty-nine people, twenty-five of whom are located in Louisiana, ten are in California, and four are in Texas (none of whom are company executives).[35] Wild further

---

[32] See Doc. 10-2, Ex. 3 to Pls.' Opp. to Def.'s Mot. to Dismiss, Bus. Orgs. Inquiry.

[33] See Doc. 10-2, Ex. 4 to Pls.' Opp. to Def.'s Mot. to Dismiss, Def.'s Houston Directory.

[34] See Doc. 13-1, Ex. 13 to Def.'s Reply, Decl. of Wild.

[35] Id. ¶¶ 3, 5. Wild stated in his declaration that only four of the nine individuals listed on its Houston directory are located in Texas with four of the other five located in Louisiana and one in Oregon. See Doc. 13-1, Ex. 13 to Def.'s Reply, Decl. of Wild ¶ 4. The court notes that the area codes on the telephone numbers of the employees on the internet directory supports Wild's statement, as four employees have telephone numbers with a 713 (Houston) area code, four with a 504 (southeastern Louisiana) area code, and one with a 503 (northwestern Oregon) area code. See Doc. 10-2, Ex. 4 to Pls.' Opp. to Def.'s Mot. to Dismiss, Def.'s Houston Directory. The one in Oregon is not listed in Wild's overall location numbers. See Doc. 13-1, Ex. 13 to Def.'s Reply, Decl. of Wild ¶ 2. The court places little importance on the exclusion of the Oregon employee from the total and finds that Wild's declaration supplements, rather than contradicts, Plaintiffs' evidence.

14

stated that Defendant's presence in Texas accounted for 9.77 percent of the vessels to which Defendant provided full agency services in 2015 and 10.78 percent of the vessels in 2016 as of November 3, 2016.[36] Employees located in Texas generated 7.65 percent of Defendant's revenues in 2015 and 7.49 percent in 2016 as of November 3, 2016.[37]

Unlike the court in Del Castillo, which found the presence of an office and the designation of a registered agent to be sufficient for general jurisdiction, this court finds that the jurisdictional facts before it do not support exercising general personal jurisdiction over Defendant. Although Defendant maintains an office in Texas, its presence in Texas accounted for approximately ten percent or less of Defendant's workforce, services to vessels, and revenue. Moreover, while having a registered agent in Texas may reflect the reasonable anticipation of being haled into court in this forum related to activities in the state, it does not reflect an expectation of being haled into court for activities unrelated to Defendant's contacts with Texas. Cf. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985) (describing the foreseeability necessary for establishing minimum contacts as "conduct and connection with the forum State . . . such that [it] should reasonably anticipate being haled into court

---

[36] Id. ¶ 6.

[37] Id. ¶ 7.

there").

Considering Defendant's company size and the low percentage of Defendant's overall business that takes place in Texas, the court finds that exercising general personal jurisdiction over Defendant would offend the "traditional notions of fair play and substantial justice" guaranteed by the due process clause.  See Latshaw, 167 F.3d at 211.  Even though Defendant is doing business in Texas, it remains at home only in Louisiana.[38]  Cf. Daimler AG, 134 S. Ct. at 761-62 (quoting Burger King Corp., 471 U.S. at 472 and cautioning against "exorbitant exercises of all-purpose jurisdiction [that] would scarcely permit out-of-state defendants 'to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'").

## IV. Conclusion

Based on the foregoing, the court **GRANTS** Defendant's motion to dismiss for lack of personal jurisdiction without reaching Defendant's arguments on venue.

**SIGNED** in Houston, Texas, this 13th day of April, 2017.

_____
U.S. MAGISTRATE JUDGE

---

[38] The court finds this conclusion consistent with the federal trend away from the exercise of general jurisdiction.  See Daimler AG, 134 S. Ct. at 758 (describing general jurisdiction as occupying "a less dominant place in the contemporary scheme"); Monkton Ins. Servs., Ltd., 768 F.3d at 432 (emphasizing how difficult it is to establish general jurisdiction in a forum other than a business's place of incorporation or its principal place of business).